BAINBRIDGE et al. v. KITCHELL EMBOSSING CO.

(Circuit Court, D. New Jersey. July 17, 1893.)

PATENTS FOR INVENTIONS—INVENTION—ANTICIPATION—PICTURE MATS.
    Letters patent No. 452,911, issued May 26, 1891, are for an "improvement in material for picture mats," consisting of a material composed of a backing or body of soft paper, and a facing of ornamental paper attached thereto and afterwards embossed, the backing, by reason of its softness, serving as a counter die, thus necessitating the use of but one die. *Held*, that the patent is void because of anticipation, and also for want of invention, in view of the prior state of the art.

In Equity. Suit by Richard W. Bainbridge and others against the Kitchell Embossing Company for infringement of a patent. Bill dismissed.

Edwin H. Brown, for complainants.

H. D. Donnelly, for defendant.

ACHESON, Circuit Judge. This bill charges infringement of letters patent No. 452,911, dated May 26, 1891, granted to Richard W. Bainbridge, for an "improvement in material for picture mats." In the specification the patentee states that the "improvement consists in a picture-mat material, composed of a backing or body of soft paper, and an embossed facing attached thereto," and that "preferably there will be a facing on each side of the soft paper." He further says:

"By this improvement I am enabled to produce a material of ornamental appearance, sufficiently thick to form a mat, and yet of such character as to be readily cut to the shape requisite for a mat."

Describing the manner in which the mat material is made, the specification states:

"A designates a number of sheets of soft paper forming a backing or body, and $A^1$, $A^2$, designate facings attached thereto. The different sheets or layers of the paper constituting the backing or body may be united by paste or other adhesive substance, and the facings may be attached in the same way to the backing or body."

It is further stated that "the backing or body gives the thickness desired for a mat, and, being soft, enables any one to readily cut through it to form a mat." It is also set forth that "the embossing of the facings, $A^1$, $A^2$, is done after their attachment to the backing or body, A," and that this is possible because the material forming the backing or body is of such a soft character that it will serve as the equivalent of a counter die, and consequently enable the embossing of each facing to be done by a single die. This is said to be very important, because the material composed of the backing or body and facing may be rolled out flat after being united, which would be impossible if the embossing were done before the attachment of the facing, for the reason that the operation of rolling out the material flat would in such case smooth out the embossing. This is the whole substance of the specification.

The claims of the patent are as follows:

"(1) As a new article of manufacture, a material for a picture mat, having a backing or body portion consisting of layers of soft paper, united together by an adhesive substance, and a facing of ornamental paper secured thereto, substantially as specified. (2) As a new article of manufacture, a sheet of material for picture mats, composed of a backing or body of soft material, and facings of ornamental paper attached to the outer sides thereof, substantially as specified. (3) The process of making material for picture mats, consisting in forming a backing or body of suitable soft paper, and attaching thereto a facing of ornamental paper, and in subsequently embossing such paper, the backing or body serving as a counter die, substantially as specified."

The defendant, among other defenses, sets up anticipation, and in one instance, at least, that defense has been made out. It is very clearly proved by trustworthy and uncontradicted testimony that in the years 1887 and 1888, the dates being fixed by book entries, before the date of Bainbridge's alleged invention, the A. M. Collins Manufacturing Company, of Philadelphia, made for, and sold and delivered to, George Barrie, of Philadelphia, and to Allen & Ginther, of Richmond, Va., mat boards for pictures, in considerable quantities, which were made by pasting together several sheets of soft paper to form the body of the mat, which was then faced with ornamental paper, and the facing subsequently embossed without the use of a counter die. The process of manufacture there pursued was identical with the method set forth in the Bainbridge patent, and the article produced, of which original specimens are exhibits in this case, corresponds substantially with the description of the patent. Hirner, a mat maker, who cut a portion of that material into picture-mats for Barrie, testifies that "it was an easy-cutting board; it hadn't a hard inner surface to it."

The rebutting proofs really go no further than this: that these exhibits are inferior to the article now manufactured by the plaintiffs. But it appears that the plaintiffs are using "wood pulp" or "wood-pulp board" for their backing or body, and in their printed brief they say:

"Our position is that the patent is really for a mat material, having a backing or body of wood pulp, and a facing or facings applied thereto, and embossed after their union, this material being superior to any other ever produced for the same purpose."

Of this, however, the patent contains not a hint. Moreover, it appears that the material spoken of in the evidence indifferently as "wood pulp" and "wood-pulp board," which is made of different thicknesses as desired, was a well-known article on the market at the time of Bainbridge's alleged invention, and had long been used to form the backing or body of card and mat boards; and it was no unusual thing for mat makers to paste together several sheets of wood-pulp board to form a thick mat. It was old to form the middles of card and mat boards out of strawboard, a soft material, and also of layers of soft paper pasted together. It was common to face the mat material made in any of these ways by pasting thereon plain ornamental paper or embossed paper. Furthermore, it is shown that as early as 1873, and since, De Jonge & Co., in the city of New York, made mat material for pictures out of wood-pulp board, and, at first, faced the material with tinted paper, and embossed the paper after it was pasted thereon; but subsequently they omitted the tinted paper, and coated the wood-pulp board, and embossed the coating. It will be perceived that the patent in suit gives no particular instructions as to the method of embossing, and suggests no new instrumentalities. It merely states that, by reason of the softness of the body of the material, the embossing can be done by a single die. But that was no patentable discovery, and, in fact, was not new in practice. Aside from the mat material made by the A. M. Collins Manufacturing Company, it appears that, prior to Bainbridge's alleged invention, bristol boards, although composed of sheets of hard paper, were embossed without a counter die. Again, the patents to George W. Ray, No. 54,404, No. 61,100, and No. 63,177, dated, respectively, May 1, 1866, January 8, 1867, and March 26, 1867, disclosed a process of embossing paper and materials made out of paper without the employment of a counter die. As far as I can see, there is no substantial difference between the process of embossing shown by Ray and the method actually practiced by the plaintiffs and the defendant respectively. The following extract is from the cross-examination of Mr. Bainbridge, the patentee, when on the stand in this case:

"142 X-Q. How long have you been familiar with the process of embossing papers between plates on one of whose faces patterns consisting of cloth were pasted, and the running the same between heavy rollers? Answer. About ten years. 143 X-Q. How does that process differ from the process which you employ for the purpose of embossing your material? A. The process is the same."

The defendant presents a number of other prior patents here pertinent, but which I will not particularly mention. As already seen, the evidence with respect to the material made by the A. M. Collins Manufacturing Company furnishes a complete defense to the bill; but, independent of that instance of clear anticipation, the proofs, I think, well warrant the conclusion that, in view of the prior state of the art, the patent in suit did not disclose any patentable invention or discovery. Let a decree be drawn dismissing the bill, with costs.